A92A0508. MARETT PROPERTIES, L. P. et al. v.
CENTERBANK MORTGAGE COMPANY.
(419 SE2d 113)

JOHNSON, Judge.

In December 1988 Marett Properties, L. P. et al. (Marett) executed a security deed in favor of Centerbank Mortgage Company (Centerbank) conveying an interest in 26 residential lots as security for a loan of $777,000. Marett defaulted on the note. Centerbank then gave notice of default and intent to foreclose and properly advertised the pending sale of the property. Pursuant to the power contained in the security deed, Centerbank conducted the foreclosure sale of real property on March 6, 1990. Centerbank submitted the only bid, of $700,000. Centerbank sought confirmation of the sale pursuant to OCGA § 44-14-161. Following a hearing, the superior court confirmed the sale. Marett appeals from that order of confirmation.

At the confirmation hearing, Centerbank's expert applied a bulk sale analysis in determining the fair market value of the property in which the property would be sold to a developer similarly situated to Marett. He acknowledged that in calculating the true market value of the property at $650,000 he considered those costs which a bulk purchaser would factor into determining market value of the property, such as carrying costs, reasonable profit and expenses.

Marett articulates three separate enumerations of error, but concedes that they all assert that the trial court erred in accepting as the fair market value of the property a figure which had been reached by considering various factors including, but not limited to, carrying costs and profit. All three enumerations having been argued together by Marett, they will be similarly treated here.

In *Government Nat. Mtg. Assn. v. Belue,* 201 Ga. App. 661 (411 SE2d 894) (1991), this court affirmed the trial court's order declining confirmation when the bank's expert reduced the fair market value of the property by the amount paid in discount points and closing costs. Relying in part on *Wheeler v. Coastal Bank,* 182 Ga. App. 112 (354 SE2d 694) (1987), the trial court in *Belue* held that market value is to be determined "without consideration of such collateral issues as the financial responsibility for or the nature and amount of expenses and closing costs to be paid to others in connection with buying or selling [the property]." *Wheeler,* 182 Ga. App. at 114.

In *First Nat. Bank &c. v. Childress-Ross Properties,* 189 Ga. App. 765 (377 SE2d 533) (1989), this court acknowledged that the true market values of properties held by multiple security instruments could not be wholesaled in order to compensate for additional expenses incurred in selling the properties individually. Because the properties " 'were handled by separate security instruments, separate loans, separate legal descriptions and separate appraisals,' the properties involved in each of the seven foreclosure sales would have to be considered separately." Id. at 766. The *Childress-Ross* case distinguished *Marion G. Davis, Inc. v. Cameron-Brown Co.,* 177 Ga. App. 646 (340 SE2d 216) (1986) by stating that: "In that case, there was only one security deed, pertaining to an entire, partially constructed condominium complex. Noting that the security deed contained no language requiring the lender to sell the property in individual units, the court simply held that the superior court was not required to add together the true market values of each of the separate units but was permitted to treat the property as a 'single investment opportunity' in determining its true market value." *Childress-Ross* at 766-767.

Since there was no requirement in the security deed in the case presently before us that the property be sold as individual lots, a bulk sale was permissible. The true market value of such property would be analyzed as "a single investment opportunity" rather than by ad-

ding together the true market values of each of the lots. See *Harwell v. First Fed. Sav. &c.*, 245 Ga. 757 (267 SE2d 229) (1980); *Classic Enterprises v. Continental Mtg. Investors*, 135 Ga. App. 105 (217 SE2d 411) (1975).

In establishing the true market value of such a single investment opportunity, an expert must apply his own knowledge and ideas in order to reach an opinion as to the market value of a project. "On appellate review, the test is not whether this court would have accepted appellant's expert appraisals as the most reliable and accurate, but whether the record contains any evidence to support the findings of the trial court that the property brought its true market value at the foreclosure sale. . . . Although the evidence was in conflict as to the market value of the property, the findings of the trial court are supported by the evidence and are not clearly erroneous." *Tarleton v. Griffin Fed. Savings Bank*, 202 Ga. App. 454 (415 SE2d 4) (1992). There was ample evidence, from both Centerbank's and Marett's experts, calculated by various means based on various factors which would authorize the trial court's conclusion that the foreclosure sale brought the true market value of the property. *BPI Constr. Co. v. Collective Fed. S. & L. Assn.*, 186 Ga. App. 324, 325 (367 SE2d 269) (1988). "In confirmation proceedings, the superior court sits as a trier of fact, and its findings and conclusions have the effect of a jury verdict. It hears the evidence and its findings based upon conflicting evidence should not be disturbed by a reviewing court if there is any evidence to support them. What value is or may have been is a question of fact to be resolved as others are. In [reviewing such issues], the superior court is the judge of the credibility of the witnesses and of the weight to be given the evidence. Although appellants present a serious challenge to the means by which the creditor's expert arrived at his opinion as to value, the expert provided the court with the basis for his opinions. As it appears that his opinion was not based on sheer speculation, an appellate court cannot second guess any methodology utilized to reach the opinion. The superior court . . . had sufficient data in evidence upon which it could apply its own knowledge and ideas so as to derive its own opinion as to the market value of the (property) at the time of the sale." (Punctuation and citations omitted.) *HSL/La Jolla Belvedere Enterprises v. Fed Sav. &c. Corp.*, 201 Ga. App. 447, 448 (411 SE2d 329) (1991).

*Judgment affirmed. Carley, P. J., and Pope, J., concur.*

DECIDED MAY 18, 1992.

*Dupree, Johnson & Poole, Hylton B. Dupree, Jr., Mark A. Johnson,* for appellants.

*Powell, Goldstein, Frazer & Murphy, Celia P. Quillian, Jeffrey*

*W. Kelley, Robert F. Dallas*, for appellee.