## A09A1344. TREFREN et al. v. FREEDOM BANK OF GEORGIA.
(684 SE2d 144)

DOYLE, Judge.

This case arises from an application for confirmation of a foreclosure sale filed pursuant to OCGA § 44-14-161 by Freedom Bank of Georgia against Robert Trefren, Jennifer Trefren, and Skitts Mountain Development, LLC (collectively "Skitts Mountain"). Skitts Mountain appeals the trial court's final order confirming the sale in the amount of $570,000, challenging the trial court's valuation of the property. Finding no error, we affirm.

The record reveals that Freedom Bank loaned Skitts Mountain $924,446.84 in exchange for a deed to secure debt, conveying a first priority security interest to the Bank in a tract of land consisting of 19 lots in a 32-lot subdivision in Hall County, Georgia.[1] Skitts Mountain defaulted on the loan, and Freedom Bank elected to declare the outstanding debt immediately due and payable. Freedom

---

[1] The Trefrens also executed personal guaranties on the loan, upon which they later defaulted.

Bank thereafter foreclosed on the property under a power of sale provision contained in the deed to secure debt. On August 5, 2008, the property was sold at auction to Freedom Bank, the highest bidder, for $570,000.

Freedom Bank then filed the instant application for confirmation of the sale, asking the trial court to find that the foreclosure proceeding was regular and that the property sold for true market value. After a hearing, the transcript of which does not appear in the record, the trial court confirmed the sale, finding that $570,000 was fair market value for the property based on the testimony of Freedom Bank's expert.

> Value on the date of sale is a factual question to be resolved by the trier of fact. In a proceeding for confirmation of a foreclosure sale of real property, the judge sits as a tri[e]r of fact, and his findings and conclusions have the effect of a jury verdict. Where the trial judge, sitting as the tri[e]r of the facts, hears the evidence, his finding based upon conflicting evidence is analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it.[2]

> A trial court cannot confirm a foreclosure sale . . . unless it is satisfied that the property so sold brought its true market value [—] the price that the property will bring when it is offered for sale by one who is not obligated, but has the desire to sell it, and is bought by one who wishes to buy it, but is not under a necessity to do so.[3]

1. Skitts Mountain argues that the trial court clearly erred by relying on the valuation testified to by Freedom Bank's expert, who used the bulk-sale valuation method to reach his figure, which deducted carrying costs and expenses before reaching the value. Skitts Mountain maintains that because the expert's valuation was erroneous, there was no competent evidence upon which the trial court could confirm the sale. We disagree.

This Court previously has affirmed confirmation of foreclosure sales even though expenses and carrying costs were used in determining true market value of a property and even when a bulk sale analysis resulted in a lower true market value than an analysis of

---

[2] (Footnote omitted.) *Fayette Promenade v. Branch Banking &c. Co.*, 258 Ga. App. 323, 324 (574 SE2d 319) (2002).

[3] (Citations and punctuation omitted.) *Cartersville Developers v. Ga. Bank &c.*, 292 Ga. App. 375, 377 (664 SE2d 783) (2008).

each individual lot contained on the property.[4]

> On appellate review, the test is not whether this court would have accepted appellant's expert appraisals as the most reliable and accurate, but whether the record contains any evidence to support the findings of the trial court that the property brought its true market value at the foreclosure sale.[5]

To support its argument that carrying costs and expenses should not have been considered by the expert in reaching the true market value, Skitts Mountain relies on this Court's decisions in *First Nat. Bank &c. v. Childress-Ross Properties*[6] and *Wheeler v. Coastal Bank*.[7] In *Wheeler*, this Court reversed the trial court's confirmation of a foreclosure sale because the expert had testified that the value of the property was between $140,000 and $145,000, reasoning that there was no evidence to support the trial court's finding that $127,000 was the true market value.[8] In that case, the expert had also testified that the seller probably would pay $13,000 in closing costs, but the trial court determined that those costs were irrelevant to determine the true market value.[9]

In *Childress-Ross*, we affirmed a trial court's denial of an application for confirmation because the expert testimony supported the trial court's finding that the foreclosure bid was not true market value.[10] That case involved 12 condominium units, which were handled by 17 different security instruments.[11] The expert testified that the true market value of each of the lots totaled more than the foreclosure sale if sold separately, but the value would be lower if they were sold to a single buyer.[12] This Court explained in a later decision that

> the true market values of properties held by multiple security instruments could not be wholesaled in order to compensate for additional expenses incurred in selling the

---

[4] See *Fayette Promenade*, 258 Ga. App. at 325-327; *Marett Properties v. Centerbank Mtg. Co.*, 204 Ga. App. 265, 267 (419 SE2d 113) (1992); *Marion G. Davis, Inc. v. Cameron-Brown Co.*, 177 Ga. App. 646 (340 SE2d 216) (1986).

[5] (Punctuation omitted.) *Marett Properties*, 204 Ga. App. at 267.

[6] 189 Ga. App. 765 (377 SE2d 533) (1989).

[7] 182 Ga. App. 112 (354 SE2d 694) (1987).

[8] See id. at 113-115 (1).

[9] See id. at 113 (1).

[10] See *Childress-Ross*, 189 Ga. App. at 766-767.

[11] See id. at 765-766.

[12] See id. at 766.

properties individually. Because the properties were handled by separate security instruments, separate loans, separate legal descriptions[,] and separate appraisals, the properties involved in each of the seven foreclosure sales would have to be considered separately.[13]

Essentially, in *Childress-Ross* and *Wheeler*, the trial courts lacked expert testimony that would show that the foreclosure bid was equivalent to the true market value of the property at the time of the sale. In this case, however, both Freedom Bank's expert and Skitts Mountain's expert testified to the true market value of the property, and both experts calculated the value by deducting various costs associated with carrying the property. Skitts Mountain's expert testified to a higher true market value, but the trial court gave explicit reasons as to why it found Freedom Bank's expert more credible than Skitts Mountain's expert. Because credibility is the purview of the trial court, we do not disturb credibility determinations on appeal.[14]

As this Court has explained numerous times, "[a]lthough [Skitts Mountain] presents a serious challenge to the means by which [Freedom Bank]'s expert arrived at his opinion as to value, the expert provided the court with the basis for his opinions."[15] Because "it appears that his opinion was not based on sheer speculation, [we] cannot second guess any methodology utilized to reach the opinion."[16] Accordingly, Skitts Mountain's enumeration is without merit.

2. Skitts Mountain argues that we should overrule *Fayette Promenade* and *Marett Properties* because the bulk-sale valuation method does not calculate the true market value of the property, which the trial court is required to do under OCGA § 44-14-161 (b).

OCGA § 44-14-161 (b) simply states that "[t]he court shall require evidence to show the true market value of the property sold [in foreclosure] and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale." The statute does not preclude any specific method of property appraisal and does not prohibit the deduction of carrying costs or other expenses in calculating the true market value of a property.[17] Although Skitts Mountain argues that *Wheeler* and *Childress-Ross* create a blanket rule that under no circumstances

---

[13] (Punctuation omitted.) *Fayette Promenade*, 258 Ga. App. at 326.

[14] See *Wilson v. Prudential Indus. Properties*, 276 Ga. App. 180, 181 (1) (622 SE2d 890) (2005).

[15] *Echols v. Edwards*, 185 Ga. App. 688, 690 (2) (365 SE2d 844) (1988).

[16] (Punctuation omitted.) *Fayette Promenade*, 258 Ga. App. at 327.

[17] See OCGA § 44-14-161 (b).

may expenses be used in calculating true market value, as explained above, the property involved in those cases differs from the property involved in this case.

Moreover, we note that at the confirmation hearing, Skitts Mountain's expert also deducted carrying costs and other expenses when he appraised the property. Although his estimate of the value of the property was higher than that of Freedom Bank's expert — $640,000 as compared to $570,000 — it supports the trial court's determination that such costs must be accounted for when determining the fair market value of this property, which was comprised of 19 lots in a subdivision, some of which contain partially finished homes.

Accordingly, we decline to overrule *Fayette Promenade* and *Marett Properties.*

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED SEPTEMBER 17, 2009.

*Schreeder, Wheeler & Flint, Philip R. Green*, for appellants.

*Strickland, Chesnutt & Lindsay, Samuel L. Chesnutt*, for appellee.